IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| CHEVRON CORPORATION.<br>                                  Petitioner,<br><br>To Issue Subpoenas For The Taking Of Depositions And The Production Of Documents. | Action No. 10-CV-2989—AW<br>10-CV-2990—AW |

## MEMORANDUM OPINION

Pending before the Court is Chevron Corporation's Ex Parte Application for and Order Pursuant to 28 U.S.C. §1782 to conduct discovery on Daniel Rourke and Carlos Picone for Use in Foreign Proceedings (Doc. No. 1); Chevron's Ex Parte Notice for Judicial Notice of Court Filings and Orders in the Lago Agrio Litigation (Doc. No. 4); and Joint Motion for Leave to File a Sur-Reply in Response to Chevron's Memorandum in Reply to Support of its Application (Doc. No. 29). A hearing was held in this matter on November 23, 2010. The Court will address each Motion *seriatim*.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioners, Chevron Corporation, file the instant Ex Parte Application to Conduct Discovery from Respondents Daniel Rourke and Carlos Picone for Use in Foreign Proceedings, or in the alternative, for an Order to Show Cause to demonstrate why discovery should not be conducted under §1782. Section 1782 authorizes "[t]he district court of the district in which a person resides or is found [to] order [the person] to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . ." 28

1

U.S.C. §1782(a). Petitioners aver that they are seeking to use the evidence obtained during this discovery for use in two separate international proceedings—1) an international arbitration that Chevron initiated against the Republic of Ecuador and 2) a lawsuit that Plaintiff's lawyer initiated in Lago, Agrio, Ecuador ("the Lago Agrio Litigation"). Petitioners allege that the Ecuadorian Plaintiffs (for whom respondents are expert witnesses) and the government of Ecuador have engaged in corruption and improper collusion, and this discovery will assist in uncovering the improper collaboration between the Plaintiffs and the government of Ecuador.

Specifically relevant to the issue at bar, at the beginning of the Lago Agrio Litigation, the Ecuadorian court ordered experts nominated by Plaintiffs and Chevron to jointly investigate and report on environmental conditions at 122 former Consortium oil production sites. Petitioners aver that two of the reports submitted by Plaintiffs were fraudulent. Petitioners allege that one of Plaintiff's judicial inspection experts, Dr. Charles Calmbacher, testified that two reports submitted to the Ecuadorian court under his name were not authored or authorized by him and that the conclusions in the reports were fabricated.

In 2007, Plaintiffs moved to appoint a single global damages expert, as opposed to allowing competing expert valuations which could be examined by a panel of Settling Experts. The Court appointed Rafael Cabrera as a special master to assess global damages caused by the oil. Petitioners contend that the report written by Cabrera was ghostwritten by environmental consultants hired by Plaintiffs' counsel. Petitioners allege that they obtained footage of an eight hour meeting between Plaintiffs' counsel, Plaintiffs' consultants, and Cabrera on March 3, 2007 (2 weeks before Cabrera's appointment as a special master), in which they were discussing Cabrera's appointment as a special master.

According to Petitioners, Ecuadorian Plaintiffs now claim that the damage assessment of $27 billion that was in the Cabrera report was too low and that $113 billion is an appropriate damage figure. According to Petitioners, Plaintiffs filed eight new expert reports to support their argument for increased damages. Two of the experts used to develop these arguments are Daniel Rourke and Carlos Picone, the respondents in the case at bar. Allegedly, these reports rely on the corrupt Cabrera Report, ultimately making respondents' reports the result of fraud.

Petitioners allege that Respondent Rourke signed two expert reports in the Lago Agrio Litigation. Thus, he is a testifying expert who is subject to discovery under §1782. His reports allege that the oil exploration and production activities in the former Concession area caused excess cancer deaths in certain provinces in Ecuador. According to Petitioners, Rourke's report states that Chevron should be liable for damages in the amount of $69.7 billion. According to Petitioners, "Respondent's report thus provides nothing more than a means to 'launder' Cabrera's opinion—in order to place some distance between the 'facts' on which Rourke relies and their fraudulent origins." (Doc. No. 1-1, at 16, Civ. Case. No. 10-2989).

Respondent Picone is a medical doctor based in Chevy Chase, Maryland. Plaintiffs consulted him to offer an opinion in the Lago Agrio Litigation on the cost of delivering health care to the population in the former Concession area. Petitioners state that in Picone's report, he concludes that the medical needs in the provinces "can be tied back to the long-standing environmental damages caused by Texaco's oil exploitation" and that "[d]eforestation due to the oil exploration has impacted the ability of people in the Concession to obtain their traditional medical treatment." Petitioners aver that Picone offers no explanation or evidence to support his conclusions. Specifically, Petitioners allege that Picone "does not say why he thinks Texaco is guilty of 'exploitation' or how oil exploration has led to deforestation or a need for health care."

(Doc 1-1, at 17[10-2990]). According to Petitioners, Respondent assumes facts that the Cabrera Report Advances, and thus they are "perpetuat[ing] the fraud by placing distance between the assumed facts and their fraudulent origin." *Id.* Chevron avers that they entitled to take discovery to determine how Respondent came to include the facts provided in their report.

The parties will be undergoing an international treaty arbitration that Chevron has initiated in the Republic of Ecuador, under the U.S.-Ecuador Bilateral Investment Treaty. In this arbitration, Chevron claims that they will attempt to show the corruption between the Ecuador Plaintiffs and the government of Ecuador in the Lago Agrio litigation. Chevron alleges that the discovery requested will aid Chevron in demonstrating that the expert reports drafted by Rourke and Picone are derived from the fraudulent Cabrera report. Petitioners request that the Court enter an order pursuant to Federal Rules of Civil Procedure 26, 30, 34, and 45 and 18 U.S.C.§1782, granting it leave to subpoena Respondents.

## II.     ANALYSIS

To obtain discovery under §1782, the petitioner must meet two requirements**:** (1) the order must be issued by "[t]he district court . . . of the district in which [respondent] resides or is found"; (2) the discovery must be "for use in a proceeding in a foreign or international tribunal;" and (3) the order may be made upon "application of any interested person." 28 U.S.C. §1782.

Both respondents can be found in this Court's district, and the parties do not contest this fact. There is no argument regarding whether Chevron is an interested party. However, the parties do contest whether an arbitration constitutes a "foreign or international tribunal" under the statute. Petitioners correctly cite to *In re Application of Chevron Corp,* 709 F. Supp. 2d 283, 291 (S.D.N.Y. 2010) for the proposition that "international arbitral bodies operating under

UNCITRAL rules constitutes 'foreign tribunals' for purposes of Section 1782." To be clear, because arbitral bodies are created by treaty and not by private parties, they do in fact constitute "foreign tribunals for purposes of the statute." Therefore, this element of Section 1782 is satisfied.

Even if petitioners comply with the statutory requirements under §1782, the Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004), listed four discretionary factors that the Court can consider to determine whether to grant discovery under §1782: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding; (2) the receptivity of the foreign tribunal to U.S. court assistance; (3) whether the Section 1782 request is an attempt to "circumvent foreign proof gathering restrictions;" and (4) whether the documents and testimony sought are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65.

### a. *Intel* Discretionary Factors

**1. Respondents as Parties to the Litigation**

In this case, neither respondents Picone or Rourke are parties to the Lago Agrio Litigation or the Treaty Arbitration, so this factor is completely satisfied.

**2. Lago Agrio's Receptiveness to Discovery**

The parties debate whether the Lago Agrio Court will be receptive to this discovery. Respondents allege that Petitioners have inundated the Lago Agrio court with motions, and that the Lago Agrio Court will not be receptive to this discovery. In an order dated August 2, 2010 the Lago Agrio Court addressed future discovery on damages in the Lago Agrio Litigation, and the Court noted that "[t]he other documents submitted by the parties and unrelated to the content of this order will not be examined, because they would be irrelevant under procedural law, *but*

*will be merely added to the file* because the judge is required to be guided by ethics in his judgments and comply with the provisions of Art.169 of the Constitution.. . . ." (Doc. No. 25-11, at, 3, Civ.Case No. 10-2989) (emphasis in original). The Respondents appear to take this quotation from the Lago Agrio Court out of context. Earlier in this order, the Lago Agrio Court ordered the parties to the Lago Agrio Litigation to submit documents setting forth and justifying their positions on the economic and applicable criteria for environmental damage remediation. Therefore, with this in mind, it appears that the Respondents have not demonstrated that the Ecuadorian Court would not be receptive to Petitioner's discovery seeking the basis for the conclusions made by respondents with respect to their damage assessments. Moreover, even if the Court does not evaluate the information obtained during discovery, this does not mean that the Ecuadorian Court will not allow this discovery. As the Ecuadorian Court has indicated, even if they do not evaluate the information, it will still go in a file in the Court.

### 3. Circumvention of the Proof Gathering Process

There is also contention surrounding whether Petitioners are attempting to circumvent the Proof Gathering Restrictions of Ecuador. As support for their opinions on Ecuadorian discovery, respondents cite the declarations of Daniela Salazar Marín, a Professor of Law at the Universidad San Francisco de Quito in Quito Ecuador who specializes in comparative law. According to Marín, "the concept of deposing a person who has been identified as an expert by one of the parties and whose opinions may be presented at trial is foreign to Ecuadorian procedural laws. Also, the practice of deposing another parties' expert before the trial and without the approval of the judge is foreign to Ecuadorian courts." (Doc. No. 25-16, Civ, Case No. 10-2989). Additionally, Marín declares, "Ecuadorian laws do not entitle the parties to demand the drafts of the expert's report. Without a court order, a party could not demand an

expert to disclose the data or other information considered during the making of his or her report." *Id.* However, as Chevron correctly points out, "§1782 contains no requirement that evidence sought from a federal court be discoverable under the law governing the foreign proceeding." Doc. No. 20, citing *Intel*, 542 U.S. at 47.

**4. Unduly Burdensome**

Finally, Respondents aver that Chevron's application for discovery is unduly intrusive. Respondents claim that Petitioners have no facts linking the Picone or Rourke to any fraud. Respondents allege that the purpose for Rourke and Picone's testimony is to assist in developing an independent evaluation and estimate of the potential costs for the remediation of environmental damages in the Concession area. Moreover, Respondents allege that the basis and sources used in Rourke and Picone's analysis are outlined in their reports, thus not warranting discovery from these experts. Specifically, Respondents aver that Picone and Rourke already disclose their review and reliance on scientific evidence, including the Cabrera report. Therefore, according to Respondents, Petitioners are engaging in this discovery request in order to harass respondents and drain their resources. Considering the circumstances surrounding this litigation, the Court does not believe that granting discovery in this matter would be unduly burdensome to Respondents.

As additional support for their belief that this discovery is unduly burdensome, respondents purport that Rourke and Picone are not parties to the international arbitration, and hence, because they are not testifying in this proceeding, Rule 26 of the Federal Rules of Civil Procedure is inapplicable to respondents. Moreover, Respondents contend that Petitioners violate Rule 30 of the Rules of Civil Procedure by failing to seek leave of the court after requesting to take more than 10 depositions. However, as Petitioners correctly assert,

7

Respondents present no case law or statutory authority to demonstrate that depositions taken under multiple §1782 proceedings in different jurisdictions should be counted collectively. Therefore, Respondents' objections on these grounds are not persuasive.

Finally, Respondents indicate that if discovery is allowed, it should be conducted under the amended version of Rule 26 of the Federal Rule of Civil Procedure which shields draft expert materials and most expert communications from discovery. The amended rule applies to litigation pending on December 1, 2010. However, Chevron avers that the rule also allows for discovery of certain materials that are otherwise protected under the Rule by "showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Doc. No. 20, at 16. Chevron alleges that pursuant to Rule 26, they "should be allowed to review Respondents' drafts and communications to verify whether the work submitted to Lago Agrio court under Respondents' names is indeed the product of their own endeavors, and second, whether Respondents' opinions are based on sound science or Plaintiffs' fraudulent misrepresentations." *Id.* At this juncture, ruling on the scope of requested discovery is beyond the scope of the Motion at bar.

## CONCLUSION

As Chevron meets all of the statutory factors under §1782, and the *Intel* discretionary factors do not overwhelmingly tip in Respondents' favor, this court will **GRANT** Chevron's application to conduct discovery from Respondents Daniel Rourke and Carlos Picone. The Court recognizes Respondents' objections to the scope of requested discovery. This Court will be referring this matter to the United States Magistrate Court for discovery proceedings, where Respondent can raise any objections to discovery.

As no opposition was filed to Chevron's Ex Parte Notice for Judicial Notice, the Court

8

will **GRANT** this motion. After hearing oral arguments on the Motions, the Court believes that no further briefing is necessary in this matter, and therefore will **DENY** the Joint Motion for Leave to File a Sur-Reply in Response to Chevron's Memorandum Opinion (Doc. No. 29). An Order consistent with this Opinion will follow.


Date:   November 24, 2010                                         _/s_____
                                                          Alexander Williams, Jr.
                                                          United States District Court